29 Kan. App.2d 950 (2001)
34 P.3d 462
In the Interest of C.C., DOB: 02/26/99; C.B., DOB: 08/26/90; and R.C., DOB: 12/31/94.
No. 86,119 [1].
Court of Appeals of Kansas.
Opinion filed July 27, 2001.
*951 A.J. Stecklein, of Kansas City, for appellant.
Sheryl A. Bussell, assistant district attorney, Nick A. Tomasic, district attorney, and Carla J. Stovall, attorney general, for appellee.
Before MARQUARDT, P.J., JOHNSON, J., and JACKSON, S.J.
JOHNSON, J.:
J.B. (hereafter referred to as "mother") and R.C. (hereafter referred to as "father"), the natural parents of C.C., C.B., and R.C., appeal the termination of their parental rights, claiming: (1) The evidence was insufficient to support the termination; and (2) the district court failed to properly consider and rule upon the parents' motion for permanent guardianship. We affirm.
Father, mother, four children (including C.C., C.B., and R.C.), and J.C. (paternal grandmother) were all residing in a home owned by J.C. On August 3, 1999, police executed a search warrant at the home. The police encountered an overpowering odor of chemicals and discovered evidence of a methamphetamine manufactory. Both parents were arrested and jailed. The children were taken into protective custody, and child in need of care (CINC) proceedings were commenced with regards to C.C., C.B., and R.C. the following day.
Subsequently, mother pleaded guilty to possession of methamphetamine with intent to sell and one count of child endangerment. She received a controlling sentence of 36 months' imprisonment. Her earliest possible release date is February 2002. Father was convicted by a jury of manufacturing methamphetamine and multiple counts of child endangerment. He is serving a controlling sentence of 162 months. The parents remained incarcerated throughout the CINC proceedings.
The children were adjudicated children in need of care pursuant to the parents' stipulations. The district court ordered each parent to complete certain requirements as prerequisites to reintegration. On February 18, 2000, the State filed a motion to terminate the parental rights of both mother and father. At a review hearing on February 25, 2000, the district court set June 5, 2000, as the termination trial date. On May 24, 2000, the parents filed two motions. One was a motion for a continuance of the termination trial. *952 The other was designated a motion for permanent guardianship and recited it was in the alternative to the continuance motion. The appearance docket notes the district court denied the continuance motion, albeit no journal entry appears in the record. There is no mention in the record on appeal regarding a disposition on the motion for permanent guardianship.
Following the contested termination hearing, the district court took the matter under advisement. On September 6, 2000, the district court issued a memorandum opinion and journal entry of judgment, finding the parents unfit and unlikely to change in the foreseeable future. The court ordered the parents' parental rights as to C.C., C.B., and R.C. terminated and placed those three children in the custody of the Secretary of the Kansas Department of Social and Rehabilitation Services with authority to consent to the children's adoption.

Sufficiency Of The Evidence
The parents first assert that the State, as petitioner, did not meet its burden of proving unfitness by clear and convincing evidence, and the evidence was insufficient for the court to terminate their parental rights. The standard of review in a termination of parental rights case is whether substantial competent evidence in the record supports the trial court's finding that the parent is unfit. In re A.N.P., 23 Kan. App.2d 686, 692, 934 P.2d 995 (1997). Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. In re J.D.D., 21 Kan. App.2d 871, 874, 908 P.2d 633 (1995). The appellate court reviews the evidence in the light most favorable to the party prevailing below and does not reweigh the evidence or substitute its judgment for that of the trial court. Although the State has the burden to prove parental unfitness by clear and convincing evidence before the district court, the clear and convincing standard does not affect this court's scope of review. 23 Kan. App. 2d at 692.
The Kansas Code for Care of Children, K.S.A. 38-1501 et seq., (CINC code) provides that the district court may terminate parental rights when it finds by clear and convincing evidence that a *953 parent is unfit by reason of conduct or condition which renders the parent unable to care properly for the child and the conduct or condition is unlikely to change in the foreseeable future. K.S.A. 1999 Supp. 38-1583(a). The statute lists nonexclusive factors the court shall consider in determining if severing parental rights is in the best interests of the child. K.S.A. 1999 Supp. 38-1583(b); In re S.M.Q., 247 Kan. 231, 236, 796 P.2d 543 (1990). Any one of the factors may be, but is not necessarily, sufficient to establish grounds for terminating parental rights, and the court shall consider all applicable factors, giving primary consideration to the needs of the child. K.S.A. 1999 Supp. 38-1583(e); In re J.G., 12 Kan. App.2d 44, 52, 734 P.2d 1195, rev. denied 241 Kan. 838 (1987).
Here, the court considered and found two statutory factors applicable to the parents' case: (1) Both parents were convicted of a felony and sentenced to prison (K.S.A. 1999 Supp. 38-1583[b][5]); and (2) there was physical, mental, or emotional neglect of the children (K.S.A. 1999 Supp. 38-1583[b][4]). The evidence of the felony convictions and ensuing imprisonment of both parents is uncontroverted.
The parents admit the evidence established that their residence contained raw materials amenable for use in the manufacturing of methamphetamine, but argue the evidence did not establish that methamphetamine was actually being manufactured in the home. The potential dangers described by law enforcement, e.g., fire, explosion, chemical irritation, or formation of lethal gas, are created by the manufacturing process. Therefore, the parents assert, the evidence did not establish the children were actually exposed to any danger.
This is not a close case. One of the officers testified that upon entering the residence, he was met by an overpowering smell of chemicals and could barely breathe in a normal manner. The children were in the house at the time. The mother testified that father was processing Actifed pills to extract the ephedrine, albeit she did not know he was making methamphetamine. She admitted she knew it was dangerous for the children to be in the house during this processing, but she made no attempts to remove the children from the home because she "had nowhere to go." She admitted to *954 using methamphetamine. She pleaded to and was found guilty of child endangerment for her role in subjecting her own children to the dangerous situation. A jury convicted father of endangering his own children. The evidence was sufficient to support the district court's finding that the children were physically neglected. The two factors were sufficient grounds for terminating parental rights.
Mother contends that even if the evidence supports the neglect finding, her condition is likely to change in the foreseeable future. At the hearing, mother described the drug and mental health counseling she received in prison. She was on a waiting list to take parenting classes. She suggests the children could be placed with J.C. until she emerges from prison with the ability to protect and parent her children.
The district court found that "[i]t is clearly not in the best interest of children who are 10, 5, [and] 1½ years old to linger in foster care for at least two years before reintegration with the mother can possibly proceed." The district court correctly intimates that the "foreseeable future" should be viewed from the children's perspective, not the parents'. "[T]ime perception of a child differs from that of an adult." K.S.A. 1999 Supp. 38-1584(a). The CINC code suggests a time frame. "Reintegration may not be a viable alternative when ... (6) the child has been in extended out of home placement as defined in subsection (z) of K.S.A. 38-1502 and amendments thereto." K.S.A. 1999 Supp. 38-1565(a). "`Extended out of home placement' means a child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months beginning 60 days after the date at which a child in the custody of the secretary was removed from the home." K.S.A. 1999 Supp. 38-1502(z). The children were removed from the home August 3, 1999. The mother testified her first eligibility to be released from prison is February 2002. By then, the children will have been in an out of home placement for 30 months. Mother's argument fails.

Motion For Permanent Guardianship
The parents' second complaint is that the district court failed to properly consider and rule on their motion for the appointment of *955 J.C., paternal grandmother, as the children's permanent guardian. The motion was filed 12 days before the termination hearing, which had been scheduled some 3 months earlier. It was proffered as an alternative in the event the district court denied the parents' motion for a continuance of the termination hearing. The record does not reflect any order setting the motion for hearing.
During the termination hearing, the parents' attorney attempted to cross-examine the children's case manager about the relationship between the children and J.C. The district court, sua sponte, interrupted the examination to inquire as to the relevance of "all this grandmother testimony." The attorney responded, "We filed a motion in the alternative for permanent guardianship and we would like you to consider that." The court opined that there was no statutory authority for such a motion, but he could consider a permanent guardianship as a dispositional alternative if he should find the State had proved unfitness.
The parents contend the district court erred by: (1) not considering evidence pertaining to their motion requesting that the grandmother be appointed permanent guardian of the children as an alternative to termination; and (2) not ruling on the motion. They claim this issue involves the exclusion of evidence and should be reviewed under an abuse of discretion standard. The State agrees with the standard of review but maintains the court did consider the motion by implication. In order to resolve this issue, we must interpret the CINC code. Interpretation of a statute is a question of law, subject to unlimited review. See State v. Patterson, 25 Kan. App.2d 245, 247, 963 P.2d 436, rev. denied 265 Kan. 888 (1998).
We glean the essence of the parents' theory to be that: (1) K.S.A. 1999 Supp. 38-1581(a) permits any interested party to file a request for permanent guardianship; (2) as natural parents, appellants are interested parties; (3) therefore, the parents are entitled to request that J.C. be appointed permanent guardian, notwithstanding the pendency of the State's motion to terminate parental rights; and (4) the district court should hear the parents' permanent guardianship motion before ruling on the State's termination motion because following termination the parents would have no standing in *956 the case. Although creative, the parents' theory is fundamentally flawed.
K.S.A. 1999 Supp. 38-1581(a) reads, in its entirety, as follows:
"(a) Either in the petition filed under this code or in a motion made in proceedings under this code, any interested party may request that either or both parents be found unfit and the parental rights of either or both parents be terminated or a permanent guardianship be appointed."
It is difficult to read that statute without concluding the movant must first request a parental unfitness finding and then request one of two alternative dispositions: termination or permanent guardianship. K.S.A. 1999 Supp. 38-1583(g) supports this interpretation. The parents' motion did not request that they be found unfit. To the contrary, the parents vigorously opposed the State's assertions of unfitness, both at trial and on appeal. It is incongruous for the parents to profess their fitness, yet complain they were denied their right to use the procedures set forth in 38-1581(a).
The CINC code does suggest that a permanent guardian may be appointed without a finding of unfitness "with the consent and agreement of the parents." K.S.A. 1999 Supp. 38-1587(a). However, it is apparent that the "agreement of the parents" language in the CINC code is designed to provide an expeditious means to effect a permanent custody when all parties agree that permanent guardianship is in the best interests of the children. Such language does not provide a means by which parents may unilaterally avoid an unfitness finding or create a right for parents to dictate the children's placement disposition following a finding of unfitness.
The district court was correct in disregarding the parents' statutorily deficient motion and proceeding to hear evidence relevant to the State's motion to terminate parental rights.
In making a post-termination placement, "the court shall give preference, to the extent that the court finds it is in the best interests of the child, first to granting ... custody to a relative of the child." K.S.A. 1999 Supp. 38-1584(3). We concede the evidence in the record is conflicting with regard to the efficacy of placing the children with J.C., paternal grandmother, and the district court did not make findings in that regard. However, as the *957 parents concede, they have no standing to challenge the post-termination disposition. J.C. did not appeal the denial of her motion for interested party status, and she is not before us asserting she should have been granted permanent guardianship. The guardian ad litem, whose sole purpose is to protect the best interests of the children, has not appealed the court's disposition. Therefore, the district court's orders should stand.
Affirmed.
NOTES
[1] REPORTER'S NOTE: Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish by an order dated September 25, 2001, pursuant to Rule 7.04 (2000 Kan. Ct. R. Annot. 46).